# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

BRANDON ALAN CRAIG,

Defendant-Appellant.

UNPUBLISHED
October 16, 2018

No. 339477
Isabella Circuit Court
LC No. 2016-001800-FH

Before: BECKERING, P.J., and RIORDAN and CAMERON, JJ.

PER CURIAM.

Defendant was convicted by jury of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e (multiple variables). The trial court sentenced defendant to serve eight months in jail and five years' probation. We affirm.

## I. RELEVANT FACTS

The victim reported to the Michigan State Police that defendant, who was the victim's first cousin, had sexually assaulted her. In the ensuing investigation, Michigan State Trooper Kevin Doyle contacted defendant to arrange an interview at a satellite office in order to obtain "his side of the story." Defendant agreed to meet for an interview. On the meeting day, defendant drove himself to the location. Doyle and Michigan State Trooper Chad Bloom conducted the interview. Defendant admitted that he suffered from a "sexual disease" that made him sexually overactive and that this condition was exacerbated by alcohol. Defendant admitted that he grabbed the victim's breasts and that he touched her inner thigh and leg area. Defendant also acknowledged that he massaged her groin area outside of her clothes before "coming to his senses" and stopped. At the completion of the interview, defendant was allowed to leave. Defendant declined to provide a written statement, and he was charged approximately nine months later. Before trial, defendant moved to suppress his statements to police, claiming that they were obtained in violation of *Miranda*.[1] The trial court denied defendant's motion after

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

conducting a *Walker*[2] hearing and proceeded to trial. Defendant was convicted of CSC-IV, and the trial court sentenced him to jail time and probation.

Defendant's probation order contained multiple conditions limiting contact and cohabitation with individuals 17 and younger. At sentencing, defense counsel informed the trial court that defendant lived with his parents and 15-year-old stepbrother. The trial court permitted defendant to have contact with his stepbrother, and it also allowed defendant to continue his supervised parenting time with his children under an earlier Friend of the Court order. However, the trial court left defendant's contact with his 10-year-old and 8-year-old sisters, as well as contact with the minor children of a woman whom he was dating, to the discretion of the probation department.

## II. CONDITIONS OF PROBATION

Defendant first argues that the trial court abused its discretion when it ordered probationary conditions that did not relate to the offense or his rehabilitative needs. We disagree.

"A sentence of probation is an alternative to confining a defendant in jail or prison and is granted as a matter of grace in lieu of incarceration." *People v Johnson*, 210 Mich App 630, 633; 534 NW2d 255 (1995). Under MCL 771.3(1), the sentencing court is required to impose certain conditions. Further, under MCL 771.3, the trial court may also impose "other lawful conditions of probation as the circumstances of the case require or warrant or as in its judgment are proper." "In setting additional conditions, a sentencing court must be guided by factors that are lawfully and logically related to the defendant's rehabilitation." *Johnson*, 210 Mich App at 634. This Court reviews preserved challenges to the trial court's decision to set terms of probation for an abuse of discretion. *People v Zujko*, 282 Mich App 520, 521; 765 NW2d 897 (2008).

Defendant objects to the probationary conditions restricting his ability to have contact with or cohabitate with a minor. Defendant contends that these conditions interfere with his ability to parent his children and his ability to date women his age with children under the age of 17. These arguments are meritless. The trial court specifically allowed defendant to have contact with his children pursuant to a Friend of the Court order regarding his visitation. The trial court also ordered the probation department to manage defendant's contact with the children of the woman he was dating upon his release date. The prosecution noted that defendant's probation agent had indicated that, if his girlfriend and her children's biological father approved of defendant's contact with the children, it would permit the contact.

Defendant additionally objects to the curfew imposed within the probationary conditions. However, defendant does not support his objection to the curfew hours with any argument or cited authority. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims . . ." *People v Payne*, 285 Mich App 181, 195;

---

[2] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

774 NW2d 714 (2009). "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004).

Defendant also raises an unpreserved constitutional challenge to the no-contact and cohabitation conditions. Unpreserved claims, including constitutional claims, are reviewed for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). Under the plain error standard of review, a defendant cannot obtain relief unless "he can establish (1) that the error occurred, (2) that the error was 'plain,' (3) that the error affected substantial rights, and (4) that the error either resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Vaughn*, 491 Mich 642, 654; 821 NW2d 288 (2012).

Defendant claims that the probationary conditions restrict his First Amendment rights to free speech and free association. However, the Fourteenth Amendment of the United States Constitution recognizes that states may not deprive individuals of their liberties without due process of law. US Const, Am XIV. The United States Supreme Court has also held that a criminal's rights are "subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Wolff v McDonnell*, 418 US 539, 556; 94 S Ct 2963; 41 L Ed 2d 935 (1974). "A probationer retains only those rights which are consistent with his probationary status." *People v Roth*, 154 Mich App 257, 259; 397 NW2d 196 (1986). Probation conditions that are designed to protect the public are generally upheld. *United States v Ritter*, 118 F 3d 502, 504 (CA 6, 1997).[3]

In this case, defendant admitted to the troopers that he sexually assaulted the victim. He further admitted that he suffered from a "sexual disease" that made him sexually overactive and that alcohol exacerbated this condition. The jury found defendant guilty of criminal sexual conduct. The trial court was also aware of a prior charge of first-degree criminal sexual conduct (CSC-I) that had been dismissed because of the 17-year-old victim's lack of cooperation. Additionally, at sentencing, the trial court noted the existence of other allegations made against defendant. Courts may consider uncharged offenses and pending charges in sentencing. *People v Coulter (After Remand)*, 205 Mich App 453, 456; 517 NW2d 827 (1994). In this case, the victim was 29 years old at the time of the assault. However, given defendant's issues with sexual addiction, the various allegations made against him, and the victim's young age in the previously dismissed CSC-I case, it was reasonable for the trial court to conclude that it should protect individuals under the age of 17 from defendant. Furthermore, defendant has failed to allege any harm arising from these conditions, and none is apparent on the record. The trial court made accommodations for defendant's siblings and children, as well as for his girlfriend's children. Therefore, the trial court did not plainly err by limiting defendant's contact with individuals under the age of 17.

---

[3] Although lower federal court rulings are not binding on this Court, they may be considered persuasive. *People v Jackson*, 292 Mich App 583, 595 n 3; 808 NW2d 541 (2011).

## III. MOTION TO SUPPRESS

Defendant argues that his statements to police must be suppressed because he was not advised of his *Miranda* warnings. We disagree.

This Court reviews a trial court's factual findings regarding the circumstances surrounding the giving of a statement for clear error. *People v Cortez (On Remand)*, 299 Mich App 679, 691; 832 NW2d 1 (2013). "Whether a person is in custody for purposes of the *Miranda* warnings requirement is a mixed question of law and fact that must be answered independently after a review of the record de novo." *Id*. This court reviews a trial court's ultimate decision concerning a motion to suppress de novo. *Id*.

"*Miranda* warnings are necessary only when the accused is interrogated while in custody, not simply when he is the focus of an investigation." *People v Herndon*, 246 Mich App 371, 395; 633 NW2d 376 (2001). Custodial interrogation is "questioning initiated by law enforcement officers after the accused has been taken into custody or otherwise deprived of his or her freedom of action in any significant way." *People v Steele*, 292 Mich App 308, 316; 806 NW2d 753 (2011). The key question is whether a reasonable person in the defendant's position would believe that he or she was free to leave. *People v Vaughn*, 291 Mich App 183, 189; 804 NW2d 764 (2010), aff'd in part, vacated in part on other grounds 491 Mich 642 (2012). "Relevant factors include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the [accused] at the end of the questioning." *Cortez*, 299 Mich App at 694.

In this case, defendant was being interviewed in the course of an investigation and was not in police custody at the time he made the statements admitting to the assault. The interview occurred at a satellite office of the Michigan State Police in a room that was closed to prevent disruption, but it was not locked. Defendant transported himself to the interview, which lasted approximately one hour. Although Doyle and Bloom were present in uniform, defendant was not restrained in any way. Defendant never asked for an attorney, and he never asked to leave. Additionally, defendant was free to leave at the end of the interview.

Defense counsel argues that a reasonable person in defendant's position would have been paranoid, and, not having been advised of his rights, would not have felt free to leave. However, the United States Supreme Court has indicated that the inquiry is not a subjective one. *JDB v North Carolina*, 564 US 261, 279; 131 S Ct 2394; 180 L Ed 2d 310 (2011). In view of all of the circumstances from an objective perspective, a reasonable person would have believed he or she was free to leave.

The trial court also determined that defendant's statements were voluntary. Whether a defendant's statement was knowingly, intelligently, and voluntarily made is determined under the totality of the circumstances. *People v Tierney*, 266 Mich App 687, 707; 703 NW2d 204 (2005). "Whether a statement was voluntary is determined by examining police conduct, but the determination whether it was made knowingly and intelligently depends, in part, on the defendant's capacity." *Id*.

In this case, defendant was not threatened or promised any leniency. Defendant was also not restrained in any way and did not have to ask to leave. He also never asked for an attorney. He made his admission at the beginning of the interview and was forthcoming with the details of the assault. Defendant appeared to be of average intelligence and was able to communicate clearly, and he did not appear to be under the influence of alcohol or narcotics, nor did he appear to be injured in any way. At the *Walker* hearing, defendant presented no evidence to show that his statements were involuntary.

In summary, the trial court did not err when it denied defendant's motion to suppress his statements to police. He was not in custody, there were no signs of police misconduct, and defendant made his statements voluntarily.

Affirmed.

/s/ Jane M. Beckering
/s/ Michael J. Riordan
/s/ Thomas C. Cameron